HEARTLAND DELAWARE INC. and
Wendover, Inc., Plaintiffs,

v.

REHOBOTH MALL LIMITED
PARTNERSHIP,
Defendant.

Civil Action No. 7377–VCG.

Court of Chancery of Delaware.

Submitted: July 2, 2012.
Decided: Aug. 27, 2012.

Kevin A. Guerke, of Seitz, Van Ogtrop & Green, P.A., Wilmington, Delaware; Attorney for Plaintiffs.

John A. Sergovic, Jr., and Shannon D. Carmean, of Sergovic, Carmean & Weidman, P.A., Georgetown, Delaware; Attorneys for Defendant.

## OPINION

GLASSCOCK, Vice Chancellor.

This matter involves whether this Court can exercise jurisdiction over what is essentially a real estate possession action, notwithstanding that the Legislature has vested exclusive jurisdiction over such matters with the Justice of the Peace Courts. Under the circumstances here, at least, the answer is no.

## I. FACTS

### A. Parties

Plaintiff WenDover, Inc. ("WenDover"), is a Delaware corporation that operates a Wendy's Old Fashioned Hamburgers franchise ("Wendy's") in Rehoboth Beach, Delaware.

Defendant Rehoboth Mall Limited Partnership ("RMLP") is a Maryland limited partnership that owns the Rehoboth Mall Shopping Center, the shopping center in Rehoboth Beach, Delaware, where WenDover's restaurant is located.

Plaintiff Heartland Delaware, Inc. ("Heartland"), is a Delaware corporation that leased land from the Defendant and then subleased the land to WenDover.

### B. History

In 1985, Wendy's Old Fashioned Hamburgers of New York, Inc. ("WONY"), entered into a lease with RMLP (the "Lease"). Under the terms of the Lease, a Wendy's would be built on a part of the Rehoboth Mall Shopping Center grounds (the "Leasehold"). The Lease had a 15–year term beginning on January 1, 1987, with five optional renewal terms of five years each wherein the rent increased each term.

On June 9, 1995, WenDover entered into a franchise agreement, presumably with WONY.[1] Then, in June of 1996, Heartland purchased and was assigned the Lease. WenDover then subleased the Leasehold from Heartland.

---

1. The Complaint is unclear with whom WenDover entered into the franchise agreement. *See* Compl. ¶ 8.

The Lease gave Heartland the right to exercise the Lease's renewal option by providing written notice 120 days before the beginning of a renewal term. Heartland exercised the Lease's first renewal term in 2001; however, in 2006, the parties disagreed whether Heartland had properly exercised the Lease's second renewal term. To resolve that dispute, Heartland agreed to pay the third renewal term's rental rate during the second renewal term, and RMLP forgave any noncompliance with the renewal provisions of the lease.

Notice of the exercise of the third renewal term option was required, under the express terms of the lease, by August 29, 2011. RMLP, according to the Complaint, contends that Heartland did not provide notice and exercise the option. Accordingly, on September 21, 2011, RMLP informed Heartland that Heartland had failed to give a timely renewal notice. Heartland asserts that it had already exercised the third renewal term option in 2006 when it agreed to pay the third renewal term's rental rate during the second renewal term. Heartland alleges that it informed RMLP of this fact, and that out of caution it also gave notice to RMLP that it intended to exercise the third renewal option. This notice was given on October 14, 2011, six weeks after the due date, and three weeks after Heartland was informed

of its purported failure to exercise the option by RMLP.

In a November 30, 2011, letter, RMLP informed Heartland that Heartland was occupying the Leasehold under an at-will tenancy and demanded that Heartland vacate the Leasehold. RMLP then began to charge Heartland monthly rent which Heartland paid. Then, in a February 9, 2012, letter, RMLP asserted that the Lease ended on November 30, 2011, and that if Heartland failed to vacate the Leasehold by March 31, 2012, RMLP would pursue legal action.[2] Heartland brought this action to forestall that eventuality.

## II. ANALYSIS

■■■■ The Court of Chancery is a court of limited jurisdiction.[3] "This Court can acquire subject matter jurisdiction over a case in three ways: (1) [through] the invocation of an equitable right; (2) [through] the request for an equitable remedy when there is no adequate remedy at law; or (3)[by] a statutory delegation of subject matter jurisdiction."[4] If a court of law provides a remedy that is "sufficient, that is, complete, practical and efficient[,] this Court is without jurisdiction."[5] When an adequate remedy at law exists, invoking a term of art or a request for traditional equitable relief will not provide a plaintiff with automatic access to this Court.[6] Instead, this Court will thoroughly examine

---

2. Heartland, at the time of the Complaint, had continued to pay its monthly rent. *See* Compl. ¶¶ 27, 28.

3. *Clark v. Teeven Holding Co., Inc.*, 625 A.2d 869, 875–77 (Del.Ch.1992).

4. *Medek v. Medek*, 2008 WL 4261017, at *3 (Del.Ch. Sept. 10, 2008); *see also* 10 *Del. C.* § 341; *Mass. Mut. Life Ins. Co. v. Certain Underwriters at Lloyd's of London*, 2010 WL 3724745, at *2 (Del.Ch. Sept. 24, 2010); *Clark*, 625 A.2d at 876.

5. *Int'l Bus. Machs. Corp. v. Comdisco, Inc.*, 602 A.2d 74, 78 (Del.Ch.1991) (internal quotation marks removed); *see also* 10 *Del. C.* § 342.

6. *Christiana Town Center, LLC v. New Castle Center*, 2003 WL 21314499, at *3 (Del.Ch. June 6, 2003) (quoting *McMahon v. New Castle Assocs.*, 532 A.2d 601, 603 (Del.Ch.1987)); *see also Comdisco*, 602 A.2d at 78.

the allegations in the complaint to determine what a plaintiff truly hopes to gain, and then decide whether equitable jurisdiction exists.[7]

RMLP moves to dismiss under Court of Chancery Rule 12(b)(1), arguing that this Court lacks subject matter jurisdiction over the claims. RMLP asserts that the Justice of the Peace Court has exclusive jurisdiction over issues related to the possession of leased premises, under Chapter 57 of Title 25 of the *Delaware Code*.[8] The Justice of the Peace Court, however, only has jurisdiction over the summary proceeding related to the possession and cannot settle any other matters in controversy.[9]

The Plaintiffs assert that they seek equitable relief that the Justice of the Peace Court cannot provide, and that this Court should therefore retain jurisdiction. The Plaintiffs set forth two bases for this Court's equitable jurisdiction. First, the Plaintiffs seek an injunction preventing RMLP from seeking relief in another forum. Second, the Plaintiffs argue that a remedy exists unique to equity whereby this Court may allow a party to an option contract to exercise that option even though the party has failed to abide by the terms of the contract.

■ For the reasons explained below, the Plaintiffs fail to assert a right to a viable equitable remedy.[10]

### A. Injunctive Relief

■ The Plaintiffs assert that this Court has subject matter jurisdiction because they seek to enjoin RMLP from filing an action for summary possession in the Justice of the Peace Court; [11] however, "[t]he General Assembly mandates exclusive jurisdiction in Justice of the Peace Court for summary possession proceedings." [12] Here, the Plaintiffs seek to en-

---

7. *Medek*, 2008 WL 4261017, at *3 ("In deciding whether or not equitable jurisdiction exists, the Court must look beyond the remedies nominally being sought, and focus upon the allegations of the complaint in light of what the plaintiff really seeks to gain by bringing his or her claim." (quoting *Candlewood Timber Group, LLC v. Pan Am. Energy, LLC*, 859 A.2d 989, 997 (Del.2004))); *Clark*, 625 A.2d at 879 ("Furthermore, this Court, in determining whether there is equity jurisdiction, examines the allegations in the complaint in light of what the claimant actually seeks to gain thereby and does not merely rely on the prayers in the pleadings.").

8. 25 *Del. C.* §§ 5701-5718.

9. *See Chitwood v. Lockhart*, 1992 WL 368609, at *1 (Del.Ch. Dec. 11, 1992).

10. The Plaintiffs seek a declaratory judgment that "the Lease has not terminated or expired and Heartland is not a holdover tenant subject to eviction." Compl. ¶ 31. The Plaintiffs also seek a declaratory judgment that RMLP waived the renewal option's notice requirements, that RMLP is estopped from terminating the Lease, and that the Lease has effectively been renewed from January 2012

through December 2017. "The seeking of declaratory relief standing alone is not a ground for jurisdiction being vested in this Court." *Murry's Steaks of Delaware, Inc. v. Mart Assocs.*, 1982 WL 17830, at *2 (Del.Ch. Sept. 29, 1982). Moreover, the Justice of the Peace Court has statutory jurisdiction over summary possession actions and filing a request for declaratory relief is insufficient to confer this Court with jurisdiction. *See Lisa's Sailboats Inc. v. Dewey Beach Lions Club*, 1991 WL 79479, at *1 (Del.Ch. May 3, 1991); *Murry's Steaks*, 1982 WL 17830, at *1–2.

11. RMLP has not filed a summary possession action, it has merely expressed an intention to do so at some unidentified point.

12. *Maddrey v. Justice of Peace Court 13*, 956 A.2d 1204, 1207–08 (Del.2008); *see* 25 *Del. C.* § 5701 ("An action for summary possession ... *shall* be maintained in the Justice of the Peace Court which hears civil cases in the county in which the premises or commercial rental unit is located" (emphasis added)). After a judgment in a nonjury trial, such as a summary possession action in the Justice of the Peace Court, a party may appeal within five days and request "a trial de novo before a special court comprised of 3 justices of the peace other than the justice of the peace who

join RMLP from exercising its statutory rights, theoretically killing two legal birds with one stone: conferring equitable-remedy jurisdiction on this Court and simultaneously divesting the Justice of the Peace Court of jurisdiction. This Court has typically resisted similar jurisdictional legerdemain in the past.[13] If a litigant could confer jurisdiction on this Court by seeking to enjoin the otherwise proper exercise of jurisdiction by the law courts, the Court of Chancery's jurisdiction would attain Brobdingnagian proportions.

In *Murry's Steaks of Delaware, Inc. v. Mart Associates*, the plaintiff lessee filed suit in this Court to enjoin the defendant lessor from causing the lessee to vacate the shopping center wherein the lessee operated a restaurant.[14] This Court held that it did not have subject matter jurisdiction because there was "an adequate remedy at law" in the Justice of the Peace Court and that, in fact, "the General Assembly ha[d] given to the Justice of the Peace Courts exclusive jurisdiction over landlord-tenant controversies."[15] Though the parties disputed whether there was a legally binding lease, this Court held that "[t]he Justice of the Peace Courts ha[d] jurisdiction to determine whether a valid lease exists and therefore ha[d] jurisdiction to determine the issue of who [was] entitled to possession [of the premise]."[16]

■ Similarly, in *Lisa's Sailboats Inc. v. Dewey Beach Lions Club*, the plaintiff lessee filed suit in this Court seeking a declaratory judgment that it had not breached its contract with the defendant lessor.[17] The lessor asserted that the lessee had breached the lease and that it intended to "institute a summary action for possession in the Justice of the Peace Court under the Delaware Landlord–Tenant Code."[18] To thwart the lessor, the lessee sought to enjoin the lessor from seeking the summary possession action.[19] This Court held that it did not have subject matter jurisdiction because the Legislature had already granted jurisdiction over summary possession actions to the Justice of the Peace Court.[20] Accordingly, I also find that this

---

presided at the trial, as appointed by the chief magistrate or a designee, which shall render final judgment, by majority vote." 25 *Del. C.* § 5717(a). Moreover, "[t]he Court shall not issue the writ of possession during the 5–day appeal period." *Id.* § 5717(d). After the initial hearing and statutory appeal, the statutory process ends, but the Superior Court can issue "the common law writ of certiorari . . . to correct errors on the face of the record." *Maddrey*, 956 A.2d at 1207.

**13.** *See generally Coin Automatic Laundry Equip. Co. v. Apartment Cmties. Corp.*, 1985 WL 22036 (Del.Ch. July 31, 1985); *Priestley v. Stoltz Management Co.*, 1984 WL 19489 (Del. Ch. May 21, 1984).

**14.** 1982 WL 17830, at *1.

**15.** *Id.* at *1–2.

**16.** *Id.* at *2.

**17.** 1991 WL 79479, at *1.

**18.** *Id.*

**19.** *Id.*

**20.** *Id.* at *1–2. *KL Golf, LLC v. Frog Hollow, LLC*, however, provided that this Court may enjoin a summary judgment proceeding in certain circumstances. 2004 WL 828377 (Del.Ch. Apr. 8, 2004). In *KL Golf*, when the defendant lessor filed a summary possession action in the Justice of the Peace Court, the plaintiff lessee filed suit in the Court of Chancery seeking to enjoin the summary possession proceeding. *Id.* at *1–2. The lease in *KL Golf* contained an arbitration clause wherein the parties agreed to adjudicate all disputes by an alternative resolution process. *Id.* at *1. This Court exercised equitable jurisdiction and enjoined the Justice of the Peace action pending arbitration. *Id.* at *2–5. While the *KL Golf* court affirmed that the power of the Court of Chancery to enjoin actions at law included "jurisdiction to restrain proceedings involving landlord tenant

Court lacks subject matter jurisdiction on this basis.

## B. Equitable Reformation in Aid of Negligence

■ The Plaintiffs argue that this Court has jurisdiction because the Plaintiffs have requested an equitable reformation remedy that only this Court can provide. As noted above, the Justice of the Peace Courts are courts of limited jurisdiction and they only "have such power as is statutorily conferred upon them." [21] As a result, "any other matters in controversy between parties to a lease must be settled by a Court competent to hear them." [22] The Plaintiffs assert that the facts to be developed in this action may indicate that Heartland failed to exercise its option rights in a timely manner, as a result of its own carelessness and inattention, and that, if so, the time requirements it agreed to in the contract should be nullified, as a matter of equity.

Specifically, the Plaintiffs argue that equity will excuse a commercial tenant's failure to exercise an option to renew a lease "where the tenant's delay is slight, the loss to the lessor is small, and the failure to grant relief would work an unconscionable hardship on the lessee." [23] The Plaintiffs assert that if they did not effectively renew the third option, equity should excuse their failure, on the premise that the prejudice to RMLP would be slight, but the harm of dispossession to the Plaintiffs would be great because the sub-lessee would be driven from its place of business. The Plaintiffs contend, therefore, that this Court must retain jurisdiction because the Justice of the Peace Court cannot provide Heartland the equitable relief it seeks.

It is important to note what remedies the Plaintiffs are *not* seeking. They do not request an equitable reformation based on fraud or oppression, a remedy potentially available in this Court.[24] Nor are they asking this Court to interpret the lease in such a way that compliance with the time limitations on exercise of the options are not essential to that exercise, which would be an invocation of the power to construe contracts available, if appropri-

disputes for possession in the Justice of the Peace Courts," the court specifically distinguished *KL Golf* from *Lisa's Sailboats*, on the ground that in that case there was no "contract right comparable to the Arbitration Clause that the parties here agreed to." *Id.* at *4. That is, the parties in *KL Golf* had already contracted away their statutory right to have the Justice of the Peace Court hear the summary possession action and the court was merely enforcing that contractual provision. RMLP and Heartland do not have a comparable bargained-for arbitration clause or analogous contractual provision that would compel this Court to follow *KL Golf.*

The Plaintiffs argue that, as in *KL Golf*, "the parties also agreed in the Lease that they are entitled to seek injunctive relief." Pls.' An. Br. at 14; *see also* Compl. ¶ 14 ("In addition to all other remedies, Lessor and [Lessee] are entitled to restraint by injunction of all violations actual, attempted or threatened of any

covenant, condition or provision of this lease."). This clause only provides that that the parties can seek a certain type of relief where a violation of the lease is threatened—a circumstance not alleged here. The clause does not represent a mandatory jurisdictional self-ordering, as the parties had agreed to in *KL Golf.*

21. *Chitwood*, 1992 WL 368609, at *2. In regard to summary possession actions, the Justice of the Peace Courts are limited "to try the right to possession-only." *Exxon Corp. v. Truitt*, 1985 WL 44695, at *2 (Del.Ch. Jan. 25, 1985).

22. *Id.* at *2.

23. *Greenhill Inv. Co. v. Tabet*, 1986 WL 412, at *6 (Del.Ch. Oct. 31, 1986).

24. *See Cerberus Intern., Ltd. v. Apollo Mgmt., L.P.*, 794 A.2d 1141, 1151–52·(Del.2002).

ate, in the law courts.[25] Instead, the relief sought is the rewriting of the terms of the lease to extend the period within which the parties had agreed that Heartland could exercise its option to renew, to accommodate Heartland's negligence, on the ground that Heartland's failure to exercise the option was inadvertent and that a balance of equitable considerations favors Heartland.

This peculiar equitable remedy—reformation in accommodation of negligence—has not been recognized by this Court before.[26] In fact, such reformation, as explained below, runs counter to established Delaware law. The Plaintiffs, however, allege that such relief was sanctioned in *Greenhill v. Tabet.*[27]

The Plaintiffs, relying on *Greenhill,*[28] argue that equitable reformation is available to certain commercial tenants who negligently fail to exercise a renewal option in a timely manner. In *Greenhill,* the plaintiff was a tenant of the defendant. The lease between the parties contained two renewal options under which the plaintiff could renew the lease if he provided 180 days written notice before the expiration of the term.[29] For the first renewal option, the plaintiff failed to provide 180 days notice, but the defendant still agreed to an extension of the lease.[30] For the second renewal option, the plaintiff failed to provide notice and the defendant notified the plaintiff that the lease would be terminated.[31] The plaintiff contended "it should be excused from its technical non-compliance with the 180–day notice provision and that its notice of renewal should be declared to be effective notwithstanding its lateness,"[32] the precise cry for relief from their own negligence that the Plaintiffs make here. The *Greenhill* court considered whether in this context there was "any equitable principle that would excuse negligent noncompliance with a time limitation of the kind here involved."[33]

Then–Chancellor Allen noted that Delaware courts had not addressed this issue, but other jurisdictions generally followed one of two lines of authority.[34] "Under the traditional view, equitable relief is not available to remedy a commercial tenant's failure to timely exercise an option to renew a lease where that failure results from simple negligence or inadvertence."[35] The

**25.** *See generally Brasby v. Morris,* 2007 WL 949485, at *3–4 (Del.Super. Mar. 29, 2007) ("Where the language of a contract does not contain a specific declaration that time is of the essence, the law permits the parties a reasonable time in which to tender performance. The reasonable time for performance is given regardless of whether the contract designates a specific date on which such performance is to be tendered." (internal quotation marks removed)). Nothing in this Opinion precludes any party from making such an argument in an appropriate court.

**26.** *See generally Greenhill,* 1986 WL 412.

**27.** *Id.*

**28.** *Id.* at *1.

**29.** *Id.*

**30.** *Id.*

**31.** *Id.* at *2.

**32.** *Id.*

**33.** *Id.* at *3.

**34.** *Id. Compare Koch v. H & S Dev. Co.,* 249 Miss. 590, 163 So.2d 710 (1964); *McClellan v. Ashley,* 200 Va. 38, 104 S.E.2d 55 (1958), *with Xanthakey v. Hayes,* 107 Conn. 459, 140 A. 808 (1928), *F.B. Fountain Co. v. Stein,* 97 Conn. 619, 118 A. 47 (1922), *Sosanie v. Pernetti Holding Corp.,* 115 N.J.Super. 409, 279 A.2d 904 (Ct.Ch.Div.1971); *J.N.A. Realty Corp. v. Cross Bay Chelsea, Inc.,* 42 N.Y.2d 392, 397 N.Y.S.2d 958, 366 N.E.2d 1313 (1977).

**35.** *Greenhill,* 1986 WL 412, at *5.

reasoning is that the parties agreed to a contract, and that absent fraud, mistake, or other malfeasance, the court should not rewrite the contract.[36] This rule protects the right to contract and "promotes commercial fairness by virtually foreclosing the potential for economic manipulation that an option requiring notice in advance of the expiration of the lease would otherwise allow." [37] The alternative view is that an equitable remedy exists for a "tenant who has negligently failed to exercise a renewal option in a timely manner where the tenant's delay is slight, the loss to the lessor is small, and the failure to grant relief would work an unconscionable hardship on the lessee." [38] This rule allows "a court to shape a remedy just and appropriate under a variety of circumstances" and though commercial certainty is sacrificed, this sacrifice can be minimized by judicial restraint.[39] The Chancellor declined to decide which approach should be followed because he concluded that "on the facts presented before the Court, the plaintiff would not be entitled to relief under either approach." [40]

Chancellor Allen revisited a similar issue seven years later. In *Greenville Retirement Community, L.P. v. Koke*, the plaintiff managed a retirement community wherein the community's residents would purchase a condominium from the plaintiff.[41] As part of the sale agreement on the resident's death the plaintiff had an option to repurchase the condominium at a discounted price.[42] The plaintiff, however, failed to exercise the repurchase option within the time contractually agreed to and the plaintiff then brought suit against the deceased's estate to force conveyance of the condominium.[43]

This Court declined to provide that relief. The dispositive question was whether the plaintiff's failure to exercise the option in a timely manner was "fatal to [the plaintiff]'s ability to force conveyance of the real estate subject to the option." [44] The failure was not the result of any "manipulation, deception or sharp practices by defendant." [45] The plaintiff simply failed to adhere to the written provision of the contract.[46] Chancellor Allen noted that "bright line provisions in contracts creating options are universally respected by courts unless the optionor is estopped or has waived the limitation they imply." [47] The Chancellor stated that "respect for the social utility achieved by the legal rule that time is of the essence in option contracts, requires the conclusion that plaintiff's right to repurchase expired or lapsed" when the plaintiff failed to exercise the option in a timely manner.[48] The Chancellor observed that the fact that "this result represent[ed] a windfall to defendants [was] not a happy circumstance, but [it was] a cost of maintaining our legal system

36. *Id.*

37. *Id.* at *6.

38. *Id.*

39. *Id.* at *7.

40. *Id.* at *3. The circumstances in *Greenhill* found insufficient to support relief were strikingly similar to the facts alleged in support of reformation here.

41. 1993 WL 328082, at *1 (Del.Ch. Aug. 11, 1993).

42. *Id.*

43. *Id.*

44. *Id.* at *5.

45. *Id.*

46. *Id.* at *4.

47. *Id.* at *5.

48. *Id.* at *6.

of clear rules that facilitate wealth creating transactions."[49]

■ "Equity respects the freedom to contract"[50] and equitable "[r]eformation is appropriate only when the contract does not represent the parties' intent because of fraud, mutual mistake or, in exceptional cases, a unilateral mistake coupled with the other parties' knowing silence."[51] None of those concerns are alleged here. Equity, therefore, will not rewrite a contract to save a party from its own negligence. It is always tempting for a judge, particularly a judge sitting in equity, to impose a result that seems "fairer" than one the parties have imposed upon themselves through contract; however, if contract rights were only to be enforced upon a balancing of the equities, mischief would result far greater than is imposed, on occasion, by letting parties order their own affairs.[52]

■ Based on the facts of this case, there is no reason to expand to the relief traditionally afforded by equitable reformation. Accordingly, this Court does not provide an equitable remedy to a commercial lessee who fails to exercise a renewal option because of its own negligence or inadvertence.[53] The "right" the Plaintiffs seek to vindicate in equity does not exist, and a request for relief under such a theory cannot confer jurisdiction here.

## III. CONCLUSION

I have found that 1) this Court does not have jurisdiction, under the facts of the complaint, to enjoin the Defendant from seeking relief from the Justice of the Peace Court in this matter where that court has exclusive jurisdiction; and 2) that a claim does not exist in equity to nullify the Defendant's contractual rights arising from the Plaintiffs' purported failure to timely exercise an option. The Plaintiffs' other arguments, based on the meaning and application of the option rights under the lease, are available at law and may be heard before the Justice of the Peace Court (and the Superior Court, if *certiorari* review is appropriate). The Defendant's Motion to Dismiss under Court

49. *Id.*

50. *Martin Marietta Materials, Inc. v. Vulcan Materials Co.,* 2012 WL 1605146, at *58 n. 283 (Del.Ch. May 4, 2012) (quoting *Asten, Inc. v. Wangner Sys. Corp.,* 1999 WL 803965, at *6 (Del.Ch. Sept. 23, 1999)); *see also Libeau v. Fox,* 880 A.2d 1049, 1056 (Del.Ch.2005) ("When parties have ordered their affairs voluntarily through a binding contract, Delaware law is strongly inclined to respect their agreement, and will only interfere upon a strong showing that dishonoring the contract is required to vindicate a public policy interest even stronger than freedom of contract.").

51. *James River–Pennington Inc. v. CRSS Capital, Inc.,* 1995 WL 106554, at *7 (Del.Ch. Mar. 6, 1995).

52. I note that the detriment that the Plaintiffs contend they will incur absent relief—that WenDover will lose its business—is likely hyperbolic. The Complaint makes it clear that

RMLP wishes to renegotiate a lease. What has happened here is that the parties agreed to a lease in 1985 at a rental rate that is now below the market. The Plaintiffs had an option to continue that lease and capture for themselves the difference between the lease rate and the market rate. If they failed to exercise that option, the parties will now have to negotiate to reallocate the surplus, presumably in a way more favorable to RMLP. If operation of a fast-food restaurant is still an appropriate use of the Leasehold, this need not result in the relocation or loss of WenDover's business.

53. I note that the analysis found in this Opinion applies only to sophisticated parties engaged in a commercial real estate transaction and may not be applicable to residential tenants where different public policy concerns exist, and whose rights are set out in the Delaware Landlord–Tenant Code. *See* 25 *Del. C.* §§ 5701–5718.

of Chancery Rule 12(b)(1) is granted; however, "[n]o civil action ... brought in any court of this State shall be dismissed solely on the ground that such court is without jurisdiction of the subject matter" and the Plaintiffs may elect to transfer this action to the appropriate court, if they so desire, by filing a written election of transfer within 60 days of the order consistent with this Opinion becoming final.[54] The parties should submit an appropriate form of order.