# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | |
|---|---|
| AMANDA LOWRY, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) C.A. No. 2019-0269-SG |
| | ) |
| NICOLE M. IRISH, ROCKLAN L. | ) |
| REYNOLDS and RANDAL L. | ) |
| REYNOLDS, | ) |
| | ) |
| Respondents. | ) |

## MEMORANDUM OPINION

Date Submitted: June 10, 2020
Date Decided: September 18, 2020

Stephen W. Spence and Stephen A. Spence, of BAIRD MANDALAS BROCKSTEDT, LLC, Lewes, Delaware, *Attorneys for Petitioner*.

Eugene H. Bayard, R. Eric Hacker, and Ross C. Karsnitz, of MORRIS JAMES LLP, Georgetown, Delaware, *Attorneys for Respondents*.

GLASSCOCK, Vice Chancellor

This matter turns on the ability of co-tenants to waive the statutory—originally common-law—right to partition an estate in real property. The Petitioner seeks partition of a tenancy in common, the Respondents interpose a contractual waiver of the right, and the matter is before me on the Petitioner's Motion for Judgement on the Pleadings.

The right to partition is based on the law's traditional abhorrence for the restraints on alienation implied by co-tenancy, and by the economic inefficiencies inherent in requiring unanimity concerning the disposition of any property. The right to partition real property is said to be absolute—a descriptor that then-Vice Chancellor Strine termed "iron[ic]" in light of cotenants' established, if limited, ability to waive the right.[1] It is better, I think, to view partition as a right inherent in all real property, jointly owned. In that sense, it is absolute. The co-owners themselves, however, as free actors, may bind themselves by contract to eschew exercise of the right. Looked at in that way, controversies over the ability to waive the "absolute" right of partition are better seen as disputes over the validity of contractual obligations to refrain from exercise, and whether such obligations may be specifically enforced. Our case-law indicates that contracts requiring the parties to eschew exercise of partition are enforceable to the extent they are clear, present

---

[1] *Libeau v. Fox*, 880 A.2d 1049, 1056 (Del. Ch. 2005), *aff'd in pertinent part*, 892 A.2d 1068 (Del. 2006).

1

some reasonable mechanism for sale as an alternative to partition, and where the restriction on partition is reasonable in duration.[2]  In such a situation, a petitioner in partition, having accepted the benefits of the contract in which she waived partition, is estopped from invoking the right to partition inherent in the co-tenancy.

The instant action involves the Workman farm, roughly 140 acres of farmland near Milton (the "Property").  The contract (the "Agreement") was between siblings, who had then just obtained the Property from their parents by gift and purchase.  The siblings, Willard Workman and Sandra Reynolds, agreed that each "waives any and all right which he may otherwise have . . . to seek a partition of the Property . . . without the prior written consent of the other parties."[3]  This promise was, specifically, binding on "third party purchasers," and the Agreement generally bound "heirs, personal representatives, successors and assigns" to its terms.[4]  The Agreement was entered for consideration; the contractual sale mechanism (which involves an appraisal procedure and right of first refusal) was reasonable, and the Agreement is thus enforceable if the duration of the restriction of partition is reasonable.  That requirement—that a restraint on the partition right is enforceable only if its duration is reasonably limited—is the crucial issue here.

---

[2] *Id*. at 1064.
[3] Defs.' Verified Answer, Defenses and Counterclaim ("Answer and Countercl."), Ex. A, Co-Ownership Agreement ("Agreement") § 4.01(b), Dkt. No. 19.
[4] *Id.* §§ 4.01(g), 7.11.

Restraints on alienation of land are disfavored in law because they restrict the owners' ability to put the property to its highest and best use. As this Court has pointed out, the social interest in highest-value use has diminished over time.[5] In fact, at the time of the Agreement (and thereafter), Delaware had rejected the common-law Rule Against Perpetuities for trusts, and the Property could have been placed in trust, avoiding co-tenancy, for 110 years.[6] Nonetheless, restrictions on the free use of property continue to be economically inefficient, and the prospect of co-tenancies entailed forever without the prospect for value-maximizing exits, with the co-tenants locked together down the generations like scorpions in a bottle, is one the law will not countenance. Accordingly, waivers by co-tenants of partition rights must be limited to a reasonable duration, or they are unenforceable.

The need for such limitations is problematic, because, to be effective, a restraint on partition must apply to assigns, and cannot simply be limited to the signatory parties themselves. A moment's reflection reveals that such must be the case; otherwise, an agreement not to partition could be avoided simply by transferring the interest to a third party, who—not himself bound—could immediately seek a partition of the estate. Obviously, then, a provision binding third-party purchasers—as per the Agreement here—is not itself fatal to the

---

[5] *Libeau*, 880 A.2d at 1058.
[6] *See* 25 *Del. C.* § 503(a), (b).

enforceability of the waiver. However, a contract to waive partition without reasonable temporal limitation *is* unenforceable for the reasons discussed above. It is with these principles in mind that I address the instant Motion for Judgement on the Pleadings, by which the Petitioner seeks an Order of Partition of the Property.

In this case, both parties to the Agreement have died. The petitioner is Amanda Lowry, daughter of Willard Workman. She owns an undivided 50% of the Property, which she received from Workman by will. Lowry seeks partition of the Property under the statute,[7] which would presumably result in her owning half of the acreage, solely. She contends she is free of the contractual waiver of partition and sale procedure provisions of the Agreement, because those provisions are unenforceable as unreasonable restraints on alienation (or because the Agreement otherwise runs afoul of the Rule against Perpetuities).

By its terms, the Agreement binds heirs and assigns. It terminates only when title is merged or where "all interests . . . are sold."[8] As such, I find, if enforced as written, the Agreement would be potentially perpetual and work an unreasonable restraint on alienation. Accordingly, the partition waiver is unenforceable, and the Petitioner is entitled to a partition. I amplify my reasoning, below.

---

[7] 25 *Del. C.* § 721.
[8] Agreement § 1.01.

# I. BACKGROUND[9]

At issue in this Petition is the Property, a nearly 140-acre parcel located just west of Milton, Delaware, fronting a major public road (Delaware Rt. 16) on the north and Lavinia Pond on the south.[10] Petitioner Amanda Lowry is a North Carolina resident who owns an "undivided one-half interest" in the Property.[11] Respondents Nicole Irish, Rocklan Reynolds, and Randal Reynolds, collectively, own the other one-half interest in the Property.[12] Both parties came into their interests in the Property through inheritance.[13]

The Property was originally three separate parcels.[14] The parties' grandparents, Willard H. Workman and Louise E. Workman (the "Grandparents"), acquired the three parcels in the 1950's and merged them into the Property.[15] On

---

[9] The facts, except where otherwise noted, are drawn from the well-pled allegations of the Petitioner's Verified Petition for Partition ("Petition"), Dkt. No. 1, and exhibits or documents incorporated therein. In this real property matter, I take judicial notice of several publicly available property records that are included with the parties' papers. *Sunrise Ventures, LLC v. Rehoboth Canal Ventures, LLC*, 2010 WL 363845, *10 n.58 (Del. Ch. Jan. 27, 2010) (taking judicial notice of publicly available property records), *aff'd*, 7 A.3d 485 (Del. 2010). The Co-Ownership Agreement at the heart of this dispute was not attached to the Petition; however, the Respondents included it with their answer and counterclaim, and I consider it here.

[10] Petition ¶ 5. The Property consists "of approximately 138.92 acres of land; otherwise identified as Sussex County Tax Map Number 2-35-14.00-83.01; which is more particularly described in deeds filed in the Office of the Recorder of Deeds, Georgetown, Sussex County, Delaware, in 1) Deed Book 5041, Page 211; and 2) Deed Book 4800, Page 98." *Id.* Lavinia Pond is sometimes denominated as "Lavina" Pond.

[11] *Id.* ¶ 1.

[12] *Id.* ¶ 2.

[13] *Id.* ¶ 6.

[14] Pet'r's Opening Br. in Support of Her Mot. for J. on the Pleadings ("Pet'r's Opening Br."), Exs. A, B, C, Dkt. No. 22.

[15] *Id.*

January 6, 1995, the Grandparents conveyed the Property to their two children, Willard A. Workman and Sandra E. Reynolds.[16] Workman's half interest ultimately passed to the Petitioner.[17] Reynolds' half-interest ultimately passed to the Respondents.[18]

On February 20, 1995, shortly after receiving their interests in the Property from the Grandparents, Workman and Reynolds entered the Co-Ownership Agreement to govern their ownership and use of the property.[19] The Agreement was not recorded. Workman and Reynolds were the only signatories to the Agreement— it was not signed by any of the parties in this Action. The Agreement provided general provisions, such as capital contributions, purposes in entering the Agreement, title, payments, rent, and management.[20] The Agreement's "Term" was as follows: "This Agreement shall take effect upon execution and shall terminate when all interests in the Property are sold or merged."[21]

Article IV of the Agreement, "Sale or Transfer of Interests in the Property," imposes various limitations on sales and transfers. Section 4.01(a) prohibits a sale

---

[16] *Id.*, Ex. D. At the same time, the Grandparents carved out an approximately two-acre parcel (the "House Parcel") from the Property and conveyed it to Grandparent Louise E. Workman, who sold it to Respondent Randal Reynolds in July 2017. *Id.*, Ex. F. Petitioner is not seeking a partition of the House Parcel.

[17] Answer and Countercl., Ex. B, Dkt. No. 19; Petition, Ex. A.

[18] Pet'r's Opening Br., Exs. G, H.

[19] *See* n.3 *supra*.

[20] Agreement, Art. I–III.

[21] *Id.* § 1.01.

or transfer without written consent: "Except as expressly provided in this Agreement, no party hereto shall sell, transfer, assign, pledge, lease or otherwise dispose of or encumber any interest in the Property without the written consent of the other parties."[22] Section 4.01(b) expressly prohibits a partition action absent consent:

> Each of the parties acknowledges that in view of the plan of operating and using the Property as a residential dwelling unit, it would be prejudicial to the interests of the parties if any party were to seek a partition of the Property by court action. Accordingly, in consideration for this Agreement, each of the parties hereby waives any and all right which he may otherwise have by law or equity to seek a partition of the Property by court action, without the prior written consent of the other parties.[23]

In the case that "any party desires to sell his interest," the Agreement provides a sale process in §§ 4.01(c)–(i), including a right of first refusal, matching rights, and recourse to a forced sale.[24] If a third party acquires an interest, "[t]he third party purchaser shall be subject to all terms and conditions of th[e] Agreement . . . ."[25]

The Agreement also contains general provisions. Several are pertinent here. First, the parties agreed to a method for determining "Fair Market Value."[26] Second, they provided for the survival of the Agreement past closing.[27] Third, they included

---

[22] *Id.* § 4.01(a).
[23] *Id.* § 4.01(b).
[24] *Id.* §§ 4.01(c)–(h).
[25] *Id.* § 4.01(g).
[26] *Id.* § 7.02.
[27] *Id.* § 7.06.

a severability clause.[28]  And, finally, the Agreement provides, "[t]his Agreement shall be binding upon and inure to the benefit of the individual parties hereto, their heirs, personal representatives, successors, and assigns."[29]

The Petitioner filed her petition for partition (the "Petition") on April 9, 2019.[30]  The Respondents answered the petition and filed counterclaims seeking to enforce the Agreement on July 3, 2019.[31]  On July 22, 2019, the Petitioner answered the counterclaims and moved for a judgment on the pleadings.[32]  I heard argument on June 8, 2020, and I asked for a supplemental statement from the parties, which they provided on June 20, 2020.[33]  That supplemental statement concerned the fact that several transactions by deed have occurred concerning the property, none by arms-length sale, resulting in the ownership of the property, now, by the current parties to this litigation, the children of the signatories of the agreement.  In the supplemental statement, the parties confirmed that "the conveyances of interests in the Property of the type that have occurred since each of the Property interests passed by testamentary document do not constitute sales of interests in the Property under the Co-Ownership Agreement, and that no party contends the Co-Ownership

---

[28] *Id.* § 7.09.
[29] *Id.* § 7.11.
[30] Petition.
[31] Answer and Countercl.
[32] Pet'r's Answer to Resp'ts' Verified Countercl., Dkt. No. 20; Pet'r's Mot. for J. on the Pleadings, Dkt. 21.
[33] Letter, Dkt. No. 40.

Agreement has been terminated under Section 1.01."[34]  Because that issue is thereby

not before me, I will not consider the transactions by deed, and will consider the

current interests as though acquired by will of the signatories.  Upon receipt of the

parties' supplemental statement, I considered the matter fully submitted.

## II. ANALYSIS

A motion for judgment on the pleadings under Chancery Court Rule 12(c)

may be granted only where no material issue of fact exists and the movant is entitled

to judgment as a matter of law.[35]  "When considering a Rule 12(c) motion, the court

must assume the truthfulness of all well-pled allegations of fact in the complaint and

draw all reasonable inferences in favor of the" non-moving party.[36]  Further, "[o]n a

Rule 12(c) motion, the Court may consider documents integral to the pleadings,

including documents incorporated by reference and exhibits attached to the

pleadings, and facts subject to judicial notice."[37]

*A. Statutory Right to Partition*

Under 25 *Del. C.* § 721, Delaware provides tenants in common with a

statutory right to partition: "When any 2 or more persons hold lands and tenements

within this State as joint tenants or tenants in common . . . any 1 or more of

---

[34] *Id.*

[35] *W. Coast Opportunity Fund, LLC v. Credit Suisse Sec. (USA), LLC*, 12 A.3d 1128, 1131 (Del. 2010); *Desert Equities, Inc. v. Morgan Stanley Leveraged Equity Fund, II, L.P.*, 624 A.2d 1199, 1205 (Del. 1993).

[36] *McMillan v. Intercargo Corp.*, 768 A.2d 492, 500 (Del. Ch. 2000).

[37] *Jimenez v. Palacios*, 2019 WL 3526479, at *8 (Del Ch. Aug. 2, 2019).

them . . . may present a petition to the Court of Chancery of the county wherein the lands and tenements are situate . . . ."[38] Upon such a petition, this Court will initiate a statutory process for the partition.[39] Unless partition in kind is impracticable, the property shall be so partitioned.[40] The right to partition a tenancy in common is grounded in the need for a "practical means . . . to break . . . unwholesome stalemates" between owners.[41] Partition rights have been a longstanding presence in equity "since the time of Henry VIII."[42] "It is well-established principle that the right of partition between cotenants is an absolute right."[43]

Notwithstanding this "absolute" right, tenants in common are permitted to waive the statutory right to partition through an agreement.[44] To effectively waive, the contract containing the waiver must first do so clearly. Additionally, the waiver must be reasonable, meaning that "written agreements not to partition are sanctioned if they are fair and equitable."[45] In short, this means that "in order for an agreement not to partition to be enforceable it must be in writing and for a reasonable period of

---

[38] 25 *Del. C.* § 721(a).
[39] 25 *Del. C.* § 721(b).
[40] *Id.*
[41] *Libeau*, 880 A.2d at 1056.
[42] *Kuck v. Cropper*, 1978 WL 22465, at *3 (Del. Ch. Dec. 5, 1978).
[43] *Id.* (emphasis omitted).
[44] *Libeau*, 880 A.2d at 1056 ("As this court has previously noted, with a touch of irony, the 'absolute right to partition, however, is subject to some limitations' . . . the right may be waived by contract." (alterations omitted) (quoting *Kuck*, 1978 WL 22465, at *3)).
[45] *Kuck*, 1978 WL 22465, at *3 (citation omitted).

time."[46]  The period of time will be deemed unreasonable if it is "unlimited in duration."[47]

Here, the parties concur that the Agreement waives the statutory right to partition, both implicitly in §§ 4.01(c)–(h) by providing an exit mechanism and explicitly in § 4.01(b).[48]  Section 4.01(b) provides: "each of the parties hereby waives any and all right which he may otherwise have by law or equity to seek a partition of the Property by court action."[49]  While the exit mechanism provided in Sections 401(c)–(h) is not inequitable if agreed to for a limited time, I note that that mechanism is not the equivalent of a partition right; a method of exit that gives a co-tenant a shot at receiving the fair market value of an undivided interest is a far cry from what the Petitioner here could achieve through partition—undivided ownership of seventy acres of land.  Further, as the Petitioner points out, and the Respondents do not meaningfully contest, the Agreement as written is potentially perpetual; it binds heirs and assigns, and does not end until the entire interest is either merged or sold.  Thus, if one co-tenant buys out the others, title merges, and the Agreement terminates; if all co-tenants sell their interest to third parties, the Agreement terminates.  So long as the heirs of one co-tenant retain an interest, however, they

---

[46] *Id.* (citation omitted).
[47] Restatement (First) of Property § 406 (1944); *McInerney v. Slights*, 1988 WL 34528, at *6–*7 (Del. Ch. Apr. 13, 1988).
[48] *See* Resp'ts' Answering Br. in Opp'n to Pet'r's Mot. for J. on the Pleadings 26 ("Resp'ts' Answering Br."), Dkt. 28; Pet'r's Opening Br. 1.
[49] Agreement, § 4.01(b).

11

have the right to enforce the agreement, potentially forever. As it stands, therefore, the Agreement exerts an unreasonable restraint on alienation.

The Respondents contend that, notwithstanding my finding above, I should withhold judgement on the pleadings because the Agreement is ambiguous. A contract is ambiguous "when the provisions *in controversy* are reasonably or fairly susceptible of different interpretations or may have two or more different meanings."[50] If a contract is ambiguous, then the Court may go outside the contract and review extrinsic evidence to determine the parties' intent.[51]

The Respondents suggest that such an inquiry into extrinsic evidence is necessary here, and would yield, they posit, much useful information concerning the signatories' intent. But they are unable to point to pertinent ambiguity. They do assert vagueness in the contractual sale process language,[52] but that ambiguity, if such it is, is unrelated to the language within which I have determined that unenforceability resides. The pertinent language, purporting to work a waiver of

---

[50] *United Rentals, Inc. v. RAM Holdings, Inc.*, 937 A.2d 810, 830 (Del. Ch. 2007) (quoting *Rhone–Poulenc Basic Chems. Co. v. Am. Motorists Ins. Co.*, 616 A.2d 1192, 1196 (Del. 1992)) (emphasis added).

[51] *GMG Capital Invs., LLC v. Athenian Venture Partners I, L.P.*, 36 A.3d 776, 780 (Del. 2012) ("Where a contract is ambiguous, 'the interpreting court must look beyond the language of the contract to ascertain the parties' intentions.'" (quoting *Eagle Indus., Inc. v. DeVilbiss Health Care, Inc.*, 702 A.2d 1228, 1232 (Del. 1997))).

[52] The Respondents argue that the *Petitioner* thinks the Agreement is ambiguous based on the Petitioner's statement that the sale mechanism is "confusing." The fact that the exit mechanism provided in § 4.01 may be difficult to follow, however, does not render the Agreement ambiguous or susceptible to multiple interpretations, particularly regarding the provisions concerning the duration of the Agreement that are at issue here.

12

partition binding on heirs of the signatories, is clear. The Respondents assert vigorously that because they benefit from inferences at this pleading stage, "questions about the Co-Ownership Agreement's meaning must all be assumed in Respondents' favor."[53] True, but inapt. Where a contract's plain meaning is clear, the provisions of the contract themselves govern: "Contract terms themselves will be controlling when they establish the parties' common meaning so that a reasonable person in the position of either party would have no expectations inconsistent with the contract language."[54]

*B. Reformation*

The Respondents next argue that the Motion for Judgement on the Pleadings should be denied and a record created to allow reformation of the Agreement. They point to their family's living arrangements, continued proximity to the Property, and their continued farming of the land (facts contained in an affidavit submitted by one of the Respondents) and argue that the Agreement "was never meant to last indefinitely and was only meant to apply to the parties' immediate family."[55] Such intent is found nowhere in the Agreement, and the Respondents seek reformation to

---

[53] Resp'ts' Answering Br. 15.

[54] *GMG Capital*, 36 A.3d at 780 (quoting *Eagle Indus.*, 702 A.2d at 1232).

[55] Resp'ts' Answering Br. 15–16; Resp'ts' Answering Br., Ex. A, Aff. of Dr. Nicole Irish, at 2 ("Irish Aff.").

13

reflect this "true" intent.[56] The Respondents argue that the termination clause of the Agreement should be reformed, to provide for termination after these parties, the children of the signatories, have passed. Again, there is nothing in the language of the Agreement itself that suggests an intent to limit the duration to two generations.

"[R]eformation . . . corrects an enforceable agreement's written embodiment to 'reflect the parties' true agreement.'"[57] Reformation, because it necessarily contradicts the parties' written agreement, must be applied with caution lest it destroy the value of freedom of contract.[58] Therefore, the entitlement to a reformation must be demonstrated by clear and convincing evidence of the terms of the "true" unwritten agreement.[59] "[W]here parties have entered into a written contract with knowledge of the express terms thereof, reformation will not be granted unless it can be demonstrated that the party seeking such form of relief acted under the influence of fraud or under a misapprehension resulting from mutual

---

[56] I note that the Agreement has an Integration clause, which provides: "This Agreement is the entire agreement between the parties with respect to the subject matter hereof . . . ." Agreement, § 7.04.

[57] *Scion Breckenridge Managing Member, LLC v. ASB Allegiance Real Estate Fund*, 68 A.3d 665, 677 (Del. 2013) (quoting *In re Schick*, 232 B.R. 589, 598 (Bankr. S.D.N.Y. 1999)).

[58] *See Heartland Delaware Inc. v. Rehoboth Mall Ltd. P'ship*, 57 A.3d 917, 925 (Del. Ch. 2012) ("Equity respects the freedom to contract and equitable [r]eformation is appropriate *only* when the contract does not represent the parties' intent because of fraud, mutual mistake or, in exceptional cases, a unilateral mistake coupled with the other parties' knowing silence.") (emphasis added).

[59] *E.g. James River-Pennington Inc. v. CRSS Capital, Inc*, 1995 WL 106554, at *7 (Del. Ch. Mar. 6, 1995).

mistake."[60]  The need for reformation, by Rule, must be pled with particularity.[61] Here, the Respondents filed an Answer and Counterclaim to the Petition; that pleading seeks, *inter alia*, a declaration that the Agreement is "lawful and binding upon" the parties.[62]  The pleading is silent as to the Respondents' current contention that the contract does not reflect the signatories' intent, and the pleading does not seek reformation.  Extraneous to the pleadings, one Respondent, Dr. Irish, filed an affidavit which vaguely states that the Agreement "was meant to remain in effect only while family members owned an interest in the property."[63]  The record is devoid of any specific pleading that the unexpressed intent of the signatories was to limit the duration of the Agreement to two generations, to the signatories and their children then living, or any similar limited period, let alone that the signatories had orally agreed to place that intent in the contract, but had been stymied by mutual mistake or fraud.

To the extent the Respondents are arguing that reformation is available simply to insert language which could render the partition waiver enforceable here, I disagree.  The Respondents point to *Libeau v. Fox*,[64] another case of a petitioner seeking to avoid a waiver of partition via contract. The *Libeau* court found that the

---

[60] *Gracelawn Memorial Park, Inc. v. Eastern Memorial Consultants, Inc.,* 280 A.2d 745, 748 (Del. Ch. 1971).
[61] Del. Ct. Ch. R.9(b).
[62] Resp'ts' Countercl. ¶ 54.
[63] Irish Aff. ¶15.
[64] 880 A.2d at 1056.

contract there, as written, created an impermissible restraint on alienation because it failed to limit the duration of the partition waiver, but then reformed the agreement at issue to prevent an unreasonable duration based on the intent of the parties.[65] The reformation in *Libeau*, I note, was created on a post-trial record, and the facts of the case are readily distinguished from the matter before me. Libeau involved the desire of the signatories to the contract to enjoy joint ownership of a beach house. One co-tenant sought to void their agreement after she became dissatisfied with it. The resulting trial involved those original signatories, and the court was able to determine that they had no intent to bind anyone but themselves and their assigns *during their lifetimes*. The failure to limit the duration of the restriction in *Libeau* was a foot-fault, and the Court reformed to permit enforceability, based on the signatories' intent, in a way that held the petitioner there to her bargain. Here, the requested reformation comes from parties taking from a signatory by will; the original signatories are dead. The reformation sought would conveniently limit the duration to the current descendants, but would cut out the next generation. But the Respondents have failed to plead specific facts that could support such a reformation.

_____

---

[65] *Id.* at 1063–64.

It is not surprising that a farming family would attempt to restrain the partition rights of family-member cotenants, to preserve the integrity of the farming operation in light of the increasing economic pressure to develop farmland in eastern Sussex County. It is impossible for this judge not to be sympathetic to such an intent. The signatories, Willard Workman and Sandra Reynolds, had the ability to limit their own rights, as co-tenants, to partition. They lacked the ability, however, to impose their own waiver of partition rights upon their descendants, *ad infinitum*. Because their attempt to do so imposes an improper restraint on alienation, their heirs may not enforce the Agreement.

### C. Rule Against Perpetuities

Having found the Agreement unambiguous and unreasonable in its restraint on alienation, I do not address the parties' arguments regarding the rule against perpetuities.

## III. CONCLUSION

The Petitioner's Motion for Judgment on the Pleadings is GRANTED. The Parties should submit an appropriate form of order.[66]

---

[66] It seems to me unlikely that the Respondents could plead an action for reformation of the Agreement consistent with Rule 9. I note, however, that Rule 15(aaa), precluding amendment after a motion to dismiss is responded to, is not applicable to the Respondents' response to the Petitioners' Motion for Judgement on the Pleadings. Nothing herein should be read to preclude the Respondents from seeking leave to file an amended Response and Counterclaim, if appropriate. A predicate for leave to be granted, however, would be sufficiency of the pleading in stating a claim for reformation.