WEST COAST OPPORTUNITY FUND, LLC, Defendant Below, Appellant,

v.

CREDIT SUISSE SECURITIES (USA), LLC, Plaintiff Below, Appellee.

No. 474, 2009.

Supreme Court of Delaware.

Submitted: March 10, 2010.
Decided: May 17, 2010.

Daniel A. Dreisbach (argued), Scott W. Perkins and Peter C. Wood, Jr., Esquires, of Richards, Layton & Finger, P.A., Wilmington, Delaware, for Appellant.

Daniel B. Rath and Rebecca L. Butcher, Esquires, of Landis Rath & Cobb LLP, Wilmington, Delaware; Of Counsel: Allan N. Taffet (argued) and Brian A. Burns, Esquires, of Duval & Stachenfeld LLP, New York, New York; for Appellee.

Before STEELE, Chief Justice, HOLLAND, BERGER, JACOBS and RIDGELY, Justices, constituting the Court en Banc.

JACOBS, Justice:

West Coast Opportunity Fund, LLC ("West Coast"), the defendant below, appeals from a Court of Chancery interlocutory order granting judgment on the pleadings. In its order the Court of Chancery declared that a "lockup" agreement prohibiting a transfer of stock in Green-Hunter Energy, Inc. ("GreenHunter") did not govern the transfer of pledged shares of GreenHunter to the plaintiff below, Credit Suisse Securities (USA), LLC ("Credit Suisse"), in the circumstances at bar. During oral argument on this appeal, the parties and this Court raised legal issues that had not been fully developed in the parties' pleadings and briefs. For that reason, we remand to allow the parties to amend their pleadings properly to address those issues, and for the Court of Chancery to decide those issues in the first instance.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. West Coast Invests in GreenHunter

West Coast is a Delaware limited liability company that engages in asset management. In March 2007, West Coast and other parties invested $15 million in GreenHunter, which is a publicly traded Delaware corporation that manages renewable energy assets. One of the instruments executed by the investors, including GreenHunter, was a Registration Rights Agreement. That Agreement required four GreenHunter senior executives to execute lockup agreements that prohibited the sale, transfer or disposition of any GreenHunter stock for 360 days from the date that the United States Securities and Exchange Commission declared an anticipated registration statement effective. Gary C. Evans ("Evans"), GreenHunter's

Chairman and Chief Executive Officer, was one of the GreenHunter senior executives who executed a lockup agreement in March 2007 ("the Lockup Agreement"). That Lockup Agreement pertinently provided:

To induce the [2007 investors] to enter into the proposed transactions with [GreenHunter], the undersigned hereby agrees that, without the prior written consent of [West Coast] ... he will not, during the [relevant] period ... (1) offer, pledge, sell, contract to sell, sell any option or contract to purchase, purchase any option or contract to sell, grant any option, right or warrant to purchase, lend or otherwise transfer or dispose, directly or indirectly, any shares of Common Stock or any securities convertible into or exercisable or exchangeable for Common Stock or (2) enter into any swap or other arrangement that transfers to another, in whole or in part, any of the economic consequences of ownership of Common Stock, whether any such transaction described in clause (1) or (2) above is to be settled by delivery of Common Stock or such other securities, in cash or otherwise.

In his Lockup Agreement, Evans also consented "to the entry of stop transfer instructions with [GreenHunter's] transfer agent and registrar against the transfer" of any GreenHunter stock in contravention of the Agreement. Evans executed the Lockup Agreement in the following manner:

Name: Gary C. Evans

Title: Chief Executive Officer

No Company name was shown under the title "Chief Executive Officer."

At the time he executed the Lockup Agreement and thereafter, Evans neither owned nor held any GreenHunter shares directly. Evans did, however, own and hold GreenHunter shares indirectly, through Investment Hunter LLC ("Invest-

ment Hunter"), a Delaware limited liability company of which Evans was the sole owner, member and manager.

### B. Investment Hunter Pledges Shares to Credit Suisse

In July 2008, Investment Hunter established a margin account with—and borrowed over $2.4 million from—Credit Suisse. As collateral, Investment Hunter pledged 400,000 GreenHunter shares to Credit Suisse. In the Stock Borrower's Agreement that established the margin account, Investment Hunter represented to Credit Suisse that:

> The [pledged GreenHunter] Shares are fully paid for and the undersigned is the conditional beneficial owner of the pledged shares, free and clear of any security interest, claim or charge. The Shares are registered in the name of the undersigned, no other person or entity has an interest in the Shares and the undersigned has full right, power and authority to sell, pledge, transfer and deliver the Shares.

Evans signed the Stock Borrower's Agreement in his capacity as manager of Investment Hunter.

The complaint alleges that before the margin account was established, Green-Hunter's General Counsel, Morgan F. Johnston, issued a legal opinion representing to Credit Suisse that, based on Johnston's and GreenHunter's "investigation of the facts ... and other matters," the pledged shares were "eligible to be sold" to satisfy a margin deficiency.

### C. Credit Suisse Issues a Margin Call

Several months after the margin account was established, the market value of the pledged GreenHunter shares dropped significantly below the amounts Investment Hunter had borrowed. Consequently, on October 10, 2008, Credit Suisse issued a margin call.

Two days later, in a letter dated October 12, 2008, GreenHunter's General Counsel responded to Credit Suisse. First, counsel advised Credit Suisse that West Coast, which was a "principal shareholder" of GreenHunter, intended to enforce the Lockup Agreement (a copy was attached to counsel's letter), and prevent the sale of any shares to meet the margin call delinquency. Second, counsel informed Credit Suisse that West Coast had demanded that GreenHunter place a stop transfer order on any GreenHunter shares held by Investment Hunter or Evans. In this lawsuit, West Coast claims that it did not review counsel's October 12, 2008 letter, and denies that it "officially" instructed GreenHunter to take any specific action with respect to the pledged shares.

### D. Procedural History of This Action

On February 17, 2007, Credit Suisse filed a two-count complaint against West Coast in the Court of Chancery. In Count I, Credit Suisse sought a declaration that the Lockup Agreement does not prohibit a transfer of the GreenHunter shares pledged to Credit Suisse. In Count II, Credit Suisse sought damages for West Coast's interference with the contract between Credit Suisse and Investment Hunter.

On March 25, 2009, Credit Suisse moved for partial judgment on the pleadings on Count I. That same day, West Coast cross-moved for judgment on the pleadings on both Counts. By Order dated July 30, 2009, the Court of Chancery granted Credit Suisse's motion and denied West Coast's motion. The Vice Chancellor held that "Investment Hunter is not bound by the Lockup Agreement, and thus [West Coast] cannot interrupt the transfer of Green-Hunter shares to Credit Suisse." The Vice Chancellor declined, however, to interpret the transfer restriction in the

Lockup Agreement, or to determine whether Evans had violated that restriction by "directly or indirectly" pledging the GreenHunter shares titled in the name of Investment Hunter. In his order granting the declaration sought by Credit Suisse, the Vice Chancellor denied West Coast's motion for judgment on the pleadings of Count II, because of disputed material facts, including whether or not West Coast had instructed GreenHunter to issue the stop transfer order.

This Court accepted West Coast's interlocutory appeal from the Court of Chancery's order. Oral argument took place on March 10, 2010.

### ANALYSIS

*A. Claims on Appeal*

West Coast claims that the Court of Chancery erroneously granted Credit Suisse's motion for judgment on the pleadings, for two reasons. First, West Coast argues that Evans *personally* breached the Lockup Agreement by causing Investment Hunter to pledge GreenHunter shares to Credit Suisse. That breach triggered West Coast's contractual right to instruct GreenHunter to stop the transfer of the pledged GreenHunter stock. Therefore, West Coast argues, it is immaterial whether Investment Hunter was directly bound by the Lockup Agreement, because the Vice Chancellor needed only

to decide whether or not *Evans* "directly or indirectly" pledged GreenHunter shares in breach of the Lockup Agreement. By declining to so determine, West Coast urges, the Vice Chancellor reversibly erred.[1]

■ Second, and alternatively, West Coast claims that the Court of Chancery should not have entered judgment on the pleadings because there are material issues of disputed facts as to whether: (1) West Coast and Evans intended for Investment Hunter to be bound by the Lockup Agreement, and (2) Investment Hunter should be regarded as Evans' alter ego and, as such, bound by the Lockup Agreement.[2]

*B. Standard of Review*

■ Judgment on the pleadings may be entered only where the movant is entitled to judgment as a matter of law.[3] Therefore, the grant of a motion for judgment on the pleadings "presents a question of law, which we review *de novo*," to determine whether the court committed legal error in formulating or applying legal precepts.[4]

*C. Remand*

■ During this appeal, two legal issues were raised that could arguably affect the outcome of this case. Because those issues were not sufficiently addressed in the parties' pleadings or briefs, they were not

---

1. West Coast also claims that the Court of Chancery should have granted its motion for judgment on the pleadings on Count II, because a party's invocation of a legal contractual right cannot be the basis of a claim for tortious interference with a contract. *See Madison Realty Partners 7, LLC v. AG ISA, LLC*, 2001 WL 406268, at *8 (Del.Ch. Apr. 17, 2001) (holding that if a defendant could prove that its actions were a valid exercise of a contractual right, the plaintiff's tortious interference claim will ultimately fail). This Court need not address that claim, unless on remand the Court of Chancery determines that the Lockup Agreement was breached.

2. The trial court may grant a motion under Court of Chancery Rule 12(c) for judgment on the pleadings only where upon review of the pled facts and inferences therefrom in a light most favorable to the nonmoving party, no material issue of fact exists and the movant is entitled to judgment as a matter of law. *Desert Equities, Inc. v. Morgan Stanley Leveraged Equity Fund, II, LP*, 624 A.2d 1199, 1205 (Del.1993).

3. *Id.*

4. *Id.* at 1204.

dealt with in the Court of Chancery's opinion. The first issue, raised by this Court during oral argument, is whether Credit Suisse could argue that it was a *bona fide* pledgee for value without notice of an adverse claim by West Coast.[5] If the *"bona fide* pledgee" doctrine applies, the Court of Chancery would be required to determine, as a preliminary matter, whether Evans breached the Lockup Agreement by "directly or indirectly" pledging the Green-Hunter shares to Credit Suisse. The second issue (raised obliquely but not fully developed by West Coast) is whether, if Evans were found not to have personally breached the Lockup Agreement, Investment Hunter was Evans' alter ego such that Investment Hunter's pledge of the shares could be attributed to Evans, thereby resulting in a breach of the Lockup Agreement.[6]

██ On a motion for judgment on the pleadings this Court's review is limited to the contents of the pleadings.[7] Because the pleadings in their present form do not adequately present these issues,[8] we remand the case to the Court of Chancery, and instruct that the parties be given leave to amend their pleadings to frame and present those issues in a procedurally cognizable way. The Court of Chancery shall then determine the legal impact (if any) of those pleading amendments upon its prior decision and determinations.

## *CONCLUSION*

For the foregoing reasons, the case is remanded for proceedings consistent with this Opinion. Jurisdiction is retained.[9]

---

5. *See* 6 *Del. C.* § 8–303 (providing that a purchaser of securities who: (1) gives value, (2) does not have notice of any adverse claim to the security, and (3) obtains control of the securities, acquires the securities free of any adverse claim); *Fletcher v. City of Wilmington UDAG*, 905 A.2d 746 (Table), 2006 WL 2335237, at *2 (Del. Aug. 11, 2006) ("A *'bona fide* purchaser' is one who acquires legal title to property in good faith, for valuable consideration, and without notice of any other claim of interest in the [property].... The *bona fide* purchaser rule exists to protect innocent purchasers of property from competing equitable interests in the property because as strong as a plaintiff's equity my be, it can in no case be stronger than that of a purchaser, who has put himself in peril by purchasing a title, and paying a valuable consideration, without notice of any defect in it, or adverse claim to it.") (citations omitted).

6. *See* 1 WILLIAM MEADE FLETCHER, FLETCHER CYCLOPEDIA OF THE LAW OF CORPORATIONS § 41.10 ("The alter ego theory applies when there is such unity between a corporation and an individual that the separateness of the corporation has ceased. Under the alter ego doctrine, when a corporation is the mere instrumentality or business conduit of another corporation or person, the corporate form may be disregarded.").

7. *Desert Equities*, 624 A.2d at 1204.

8. West Coast did raise an "alter ego" argument below, but the Court of Chancery found that West Coast did not plead the facts necessary to put that argument at issue. As already mentioned, the *"bona fide* pledgee" argument was raised *sua sponte* by this Court during oral argument.

9. *See* Supreme Court Rule 19(c).