# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

KATHLEEN KEELER,                )
                               )
    Plaintiff-Below                )
    Appellant,                     )
                               )    C.A. No.: N17A-12-005 VLM
    v.                             )
                               )
WELLS FARGO BANK, N.A.,         )
A SUBSIDIARY OF WELLS           )
FARGO & COMPANY,                )
A DELAWARE CORPORATION          )
                               )
    Defendant-Below                )
    Appellee.                      )

## OPINION

Submitted: February 1, 2019
Decided: March 25, 2019

*Upon Consideration of Appellant's Appeal of the Decision of the Court of
Common Pleas,*
**REVERSED** and **REMANDED**.

Elwood T. Eveland, Jr., Esquire, of The Eveland Law Firm. *Attorney for Appellant.*

Nicholas T. Verna, Esquire, of Womble Bond Dickinson (US) LLP. *Attorney for
Appellee.*

**MEDINILLA, J.**

## INTRODUCTION

Plaintiff/Appellant Kathleen Keeler ("Keeler"), a bank customer, appeals the decision of the Court of Common Pleas ("the trial court") which granted judgment on the pleadings in favor of Defendant/Appellee Wells Fargo Bank, N.A. ("Wells Fargo") in its determination that the statute of limitations barred Plaintiff's claims under the Delaware Uniform Commercial Code, 6 *Del. C.* § 4-111. Keeler argues this was in error and she should have been given an opportunity to present evidence to support her claims for breach of contract and violation of banking laws under the UCC. For the reasons stated below, the judgment of the trial court as set out in its Memorandum Order on Defendant's Motion for Judgment on the Pleadings[1] dated December 5, 2017 is **REVERSED** and **REMANDED** for findings consistent with this ruling.

## FACTUAL AND PROCEDURAL HISTORY

In 2013 through June of 2014, Keeler had a checking account with Wells Fargo through a Middletown, Delaware branch.[2] She hired Christopher Watson ("Watson") to do yard work on her house.[3] Between October 15, 2013 and December 5, 2013, Watson stole checks from Keeler and he, and an accomplice

---

[1] *See generally Keeler v. Wells Fargo Bank, N.A.*, 2017 WL 6026247 (Del. Com. Pl. Dec. 5, 2017) (Memorandum Order).

[2] Compl. ¶ 3.

[3] *Id.* ¶ 4.

2

fraudulently cashed them against her account for a total of $22,200.[4]

She only found out about the unauthorized transactions on December 5, 2013 after a Wells Fargo local branch representative contacted Keeler about a check that was presented for cashing by a third-party accomplice of Watson.[5] Keeler told the Wells Fargo employee, Elsbietta Palmer, that she had not authorized the check.[6] Palmer told Keeler she would look into the problem and advised her to close her accounts and open new ones. Keeler complied and communicated again with Palmer on December 16th. Between December of 2013 and April of 2014, Keeler kept Wells Fargo representatives apprised of the ongoing criminal investigation after Wells Fargo confirmed that it would be unable to assist her pending the police investigation[7] or potential criminal prosecution.[8]

Four months later in April of 2014, Wells Fargo provide Keeler with the "appropriate forms and a process for making a claim" related to her loss.[9] Keeler immediately and timely filled out the forms and filed her claim. On August 8, 2014,

---

[4] Compl. ¶ 5.

[5] *Id.* ¶¶ 6-7. *See* Appellant's Opening Br. at 2.

[6] Compl. ¶ 7.

[7] *Id.* ¶ 8.

[8] On October 30, 2014, Watson pleaded guilty to Theft $1500 or Greater and Forgery Second Degree.

[9] Compl. ¶ 10.

Wells Fargo denied the claim on the basis that Keeler had failed to report the fraud until April 2014, and failed to notify the bank by November 30, 2013 of the *first* unauthorized transaction that occurred in October 2013.[10]  Wells Fargo also denied her claim as to the fraudulent transaction of December 5, 2013 although both parties became aware of it on the same day.  The basis for this denial was that under her "Business Account Agreement" and/or the UCC, she was obligated to report within a 30-day period any unauthorized transactions.  Because Watson also stole her bank statement, Keeler was not alerted until Wells Fargo contacted her.  Wells Fargo stated her failure to report the first fraud in a timely manner prevented her from recovery of all subsequent unauthorized transactions.[11]

### *Procedural History*

Keeler filed her Complaint on January 5, 2017, alleging breach of contract and violation of banking laws under 6 *Del. C.* § 4-406 of the Delaware Commercial Code ("UCC").  On October 13, 2017, Defendant filed its Motion for Judgment on the Pleadings and argued that she was barred by the Statute of Limitations under the UCC.  The requisite response and reply were filed by the parties.  The trial court heard oral arguments on November 3, 2017 and issued its Memorandum Order

---

[10] *See* Appellant's Opening Br., Ex. B at 2.  To conceal his fraudulent activity from Keeler, Watson intercepted the November bank statement. *See* Compl. ¶ 13.

[11] *See* Compl. ¶ 12. Appellant's Opening Br., Ex. B at 1-2.

4

granting Defendant's Motion for Judgment on the Pleadings on December 5, 2017.[12]

In its Order, the trial court did not address Keeler's breach of contract claim, except in a footnote.[13] Its rationale was that the Delaware Superior Court had found that breach of contract and negligence claims are preempted by claims under Article 4 of the Delaware UCC.[14] Focusing instead solely on the UCC, the trial court first acknowledged that Delaware UCC does not define when a cause of action accrues for purposes of §§ 4-401 and 4-406.[15] The parties were unable to provide Delaware authority and asked the court to make a determination on what approach should be adopted by Delaware in order to determine whether Keeler met the Statute of Limitations.

As a case of first impression, the court limited its consideration to the language found in 6 *Del. C.* § 4-111 to define what is meant by "cause of action" in order to determine the accrual date. In so doing, the court briefly analyzed three approaches used in other jurisdictions.[16] It considered the first approach advanced by Keeler—

---

[12] The trial court did not convert this motion to a motion for summary judgment.

[13] *See Keeler*, 2017 WL 6026247, at *1 n.1.

[14] *See id.* at *1 n.1 (citing *Mahaffy v. Assocs., Inc. v. Long*, 2003 WL 22351271, at *5-6 (Del. Super. Sept. 29, 2003) (Del Pesco, J.)).

[15] *See id.* at *3. Keeler identified a violation of 6 *Del. C.* § 4-406 in her Complaint, but Wells Fargo argued in the trial court that its obligations to Keeler are under 6 *Del. C.* § 4-401.

[16] *See id.*

5

the discovery rule—to "State UCC claims that are inherently unknowable,"[17] where the statute of limitations does not accrue until the victim knew or should have known of the wrong.[18] Keeler argued that the discovery rule should apply and advanced that the "wrong" was not when the fraudulent transactions took place in 2013. Rather, her accrual date was when she first discovered she had a viable cause of action against Wells Fargo. Arguing that her right only arose when Wells Fargo denied her claim in August 2014, she maintained she filed within the applicable statute of limitations. The second approach applies the statute of repose instead of the three year statute of limitations.[19] This was not advanced by either side.

The third approach, advocated by Wells Fargo, provides that the statute of limitations under Articles 3 and 4 begins to accrue when a negotiable instrument is negotiated, meaning when the account is debited, placing her outside the statute of limitations.[20] Although Keeler primarily argued that the "discovery rule" should apply to determine that her action accrued on August 2014, even under this theory, she argued dismissal was not warranted because there were well-pled facts alleged

---

[17] *Keeler*, 2017 WL 6026247, at *3.

[18] *See id.* (citing *Cont'l Cas. Co. v. American Nat'l Bank*, 768 N.E.2d 352, 356-57, 363-64 (Ill. App. Ct. 2002)).

[19] *See id.* (citing *Deutsch v. Wells Fargo Bank, N.A.*, 2015 WL 3833226, at *6 (E.D. Pa. June 22, 2015)).

[20] *Id.* at *3, 5.

regarding Wells Fargo's conduct that she relied upon to wait to file her action.

The trial court determined that Delaware UCC should follow the third approach. In doing so, it explained the applicability of each approach in this case, concluding that the third approach provides consistency and uniformity under the UCC.[21] It then applied the third approach to the present case, and decided that an action accrued under the UCC when the checks were cashed, between October 15, 2013 and December 5, 2017. It also determined that under Keeler's request to follow the "discovery rule," it would not have changed the outcome since it "would require this Court to apply the 'discovery rule' to a knowable UCC claim, which is counter to Delaware policy."[22] The trial court ruled against Keeler and granted Wells Fargo's Motion for Judgment on the Pleadings.[23]

Plaintiff filed an appeal on December 19, 2017 and submitted her Opening Brief on July 10, 2018. Defendant filed its Answering Brief on July 30, 2018. On August 13, 2018, Plaintiff filed her Reply Brief. The matter was assigned to this Court on September 6, 2018 and the Court scheduled oral arguments in December.[24] Upon request of Wells Fargo's counsel, they were rescheduled for January 3, 2019.

---

[21] *Keeler*, 2017 WL 6026247, at *3-5.

[22] *Id.* at 3.

[23] *See id.* at *5.

[24] Oral argument was originally scheduled on December 20, 2018.

Both sides were asked to provide supplemental written responses related to questions asked during oral arguments. Counsel provided their submissions by February 1, 2019. The matter is now ripe for review.

## STANDARD OF REVIEW

The Superior Court applies the same standard of review "for an appeal from the Court of Common Pleas" as the Supreme Court applies to appeals from the Superior Court.[25] When a motion for judgment on the pleadings has not been converted to a motion for summary judgment, as here, the appellate court's review of the grant of a motion for judgment on the pleadings "is limited to a review of the contents of the pleadings."[26] A trial court's "grant of a motion for judgment on the pleadings 'presents a question of law, which we review *de novo*,' to determine whether the court committed legal error in formulating or applying legal precepts."[27]

When a trial court is determining a motion for judgment on the pleadings pursuant to Court of Common Pleas Rule 12(c),[28] the court is required to "accept all

---

[25] *Wallace v. Geckosystems International Corp.*, 2013 WL 3340535, at *2 (Del. Super. June 26, 2013) (citing *Furniture and More, Inc. v Hollinger*, 2007 WL 2318126, at *1 (Del. Super. July 31, 2007)).

[26] *Desert Equities, Inc. v. Morgan Stanley Leveraged Equity Fund, II, L.P.*, 624 A.2d 1199, 1204 (Del. 1993) (citing *Sellers v. M.C. floor Crafters, Inc.*, 842 F.2d 639, 642 (2d Cir. 1988); *Republic Steel Corp. v. Pennsylvania Engineering Corp.*, 785 F.2d 174, 177 n.2 (7th Cir. 1986)).

[27] *West Coast Opportunity Fund, LLC v. Credit Suisse Securities (USA), LLC*, 12 A.3d 1128, 1131 (Del. 2010) (quoting *Desert Equities*, 624 A.2d at 1204).

[28] Ct. Com. Pl. Civ. R. 12(c) ("After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings.").

well-pled allegations of the Complaint as true."[29] When considering such a motion, the court "must view the facts pleaded and the inferences to be drawn from such facts in a light most favorable to the non-moving party."[30] On a motion for judgment on the pleadings, the standard is "almost identical to the standard for a motion to dismiss."[31] If no material issues of fact exist and the moving party is entitled to judgment as a matter of law, then the court may grant a motion for judgment on the pleadings.[32] For the purpose of the motion, a "moving party admits the allegations of the opposing party's pleading, but contends that they are insufficient as a matter of law."[33]

## DISCUSSION

### *The Lower Court Did Not Consider the Breach of Contract Claim*

Keeler raised a breach of contract claim in addition to a UCC claim in her Complaint.[34] Keeler argued first and foremost in her Complaint that "Wells Fargo

---

[29] *Green v. PNC Financial Services Group, Inc.*, 2015 WL 1236847, at *2 (Del. Com. Pl. Mar. 18, 2015).

[30] *Id.*

[31] *Silver Lake Office Plaza, LLC v. Lanard & Axilbund, Inc.*, 2014 WL 595378, at *6 (Del. Super. Jan. 17, 2014) (quoting *Blanco v. AMVAC Chem. Corp.*, 2012 WL 3194412, at *6 (Del. Super. Aug. 8, 2012)).

[32] *See id.* (quoting *Velocity Exp., Inc. v. Office Depot, Inc.*, 2009 WL 406807, at *3 (Del. Super. Feb. 4, 2009)).

[33] *Green*, 2015 WL 1236847, at *2 (internal citations omitted).

[34] *See generally* Compl.

9

has breached its contract with Ms. Keeler and its obligation under banking laws....["][35] She alleges that Wells Fargo "failed in its duty to reimburse the depositor for theft...."[36] Additionally, she contends that Wells Fargo violated 6 *Del. C.* § 4-406 by "not making remuneration to Ms. Keeler under *its contract* and under banking regulation."[37]

At oral arguments before the trial court, Wells Fargo insisted this was not a breach of contract case and argued:

> [Wells Fargo]: ...And I also dispute that this is a contract case. This is a UCC case. A breach of the UCC has been alleged. *There's no contract.* They didn't cite to any contractual provisions. There's not a contract attached to the Complaint. The customer agreement isn't attached to the Complaint. What is alleged in the Complaint is a breach of section 4406 of the Delaware version of the UCC....[38]

Wells Fargo makes inconsistent representations regarding the existence of a contract. It is clear from Wells Fargo's own denial letter to Keeler, submitted through the exhibits—and conceded during oral arguments before this Court—that there exists a Wells Fargo Business Account Agreement ("Agreement") applicable

---

[35] Compl. ¶ 15.

[36] *Id.* ¶ 15(a).

[37] *Id.* ¶ 15(b) (emphasis added).

[38] Transcript of Oral Argument in Court of Common Pleas at 13-14, *Keeler v. Wells Fargo Bank, N.A.*, CPU4-17-000071 (Del. Com. Pl. Nov. 3, 2017) (arguing that this case deals with a matter of contract and the running of the statute of limitations applicable to breach of contract claims should apply) (emphasis added) [hereinafter CCP Tr.].

to Plaintiff.[39] Wells Fargo relied on this Agreement to deny Keeler's claim. Specifically, the correspondence from Wells Fargo to Keeler expressly provides that it was Keeler's failure to meet her obligations under the Agreement and comply with 30-day notification provisions under the Agreement and provisions under the UCC that formed the basis for denial of her claim. Therefore, she breached the contract.

In the first footnote of its Memorandum Order, the trial court cites to *Mahaffy & Associates, Inc. v. Long*,[40] and stated it was not going to address the breach of contract claim because it is preempted by the UCC claim.[41] Although the Court in *Mahaffy* found that the breach of contract could not survive in that case, it also explained that under the UCC, contract claims may supplement the UCC's provisions and generally "the UCC does not displace the common law remedies except insofar as their reliance on the common law would thwart the purposes of the code."[42] The UCC also provides that common law causes of action, including breach

---

[39] Appellant's Opening Br., Ex. B at 2.

[40] 2003 WL 22351271 (Del. Super. Sept. 29, 2003).

[41] *See Keeler*, 2017 WL 6026247, at *1 n.1 (citing *Mahaffy*, 2003 WL 22351271, at *5-6).

[42] *Mahaffy*, 2003 WL 22351271, at *6 (citing *New Jersey Bank, N.A. v. Bradford Securities Operations, Inc.*, 690 F.2d 339, 346 (3rd Cir. 1982)). *See also* 6 *Del. C.* § 1-103(d). In *Mahaffy*, an employee of Mahaffy & Associates, Inc. ("Mahaffy") embezzled assets from Mahaffy, totaling nearly $500,000 between January 1997 and April 2001. *Id.* at *2. In June 2001, Mahaffy notified PNC of the thefts perpetrated by one of its employees. *Id.* at *3. Arguably, *Mahaffy* is distinguishable where, as here, there was no evidence that PNC employed an internal claims process to recover the money fraudulently taken by Mahaffy's employee.

of contract, supplement the provisions of the UCC, unless "displaced by the particular provisions of the [UCC]."[43] Additionally, Article 4's provisions may be varied by agreement.[44]

In *Blaskovitz by and through Blaskovitz v. Dover Federal Credit Union*,[45] the Court found that the breach of contract claim was not displaced by the UCC.[46] The Court also found that the rule in *Mahaffy* should not be interpreted to require that all potential breach of contract claims between a bank and its customer be displaced by the UCC.[47] Wells Fargo argues that this Court cannot consider this authority because it was not submitted by the parties nor was it presented before the trial court. While it is true that the Court raised this authority *sua sponte*, the Court thought it sufficiently related to the legal considerations here.[48] Even without relying upon the authority, this ruling remains the same for the following reasons.

---

[43] 6 *Del. C.* 1-103(d).

[44] 6 *Del. C.* § 4-103(a).

[45] 2017 WL 2615748 (Del. Super. June 15, 2017).

[46] *Id.* at *3-4 (explaining that "provisions of the UCC do not necessarily displace the common law" and that "there is no reason to believe that breach of contract claims are displaced" under the UCC's general displacement principles).

[47] *Id.* at *4 (explaining that if the UCC claim is not affected by the agreement between the parties, then the "UCC would remain the controlling authority and the sole available cause of action").

[48] *See, e.g., West Coast Opportunity Fund,* 12 A.3d at 1131-32 (explaining legal issues that were raised by the Court during oral argument could affect the outcome of the case).

Even if there had been no Agreement between the parties as initially represented, Wells Fargo relies solely on the provisions in the UCC to maintain Keeler is time-barred under 6 *Del. C.* § 4-111. Yet, a review of its own submissions on this record raises issues whether Wells Fargo followed applicable statutory provisions under the UCC that arguably strengthen Keeler's original breach of contract claim.

Wells Fargo provided a written denial in August 2014 because she failed to provide notice to the bank within 30 days of having knowledge of the fraudulent transactions.[49] Citing to 6 *Del. C.* § 4-406(d)(2), the bank confirmed she should have notified the bank by November 30, 2013, which was the 30-day deadline. Wells Fargo explained in writing that "if customers do not fulfill their obligation by promptly reviewing their monthly statement and reporting to Wells Fargo any unauthorized transactions committed by the *same* suspect, they become subject to the 30-day rule under [the] UCC."[50]

---

[49] *See* Appellant's Opening Br., Ex. B at 1-2.

[50] *See* Appellant's Opening Br., Ex. B at 1 (discussing 6 *Del. C.* § 4-406(d)(2) and the Wells Fargo Business Account Agreement that provides if the customer does not report an unauthorized signature or alteration within 30-days then the Bank will not be liable for subsequent authorized transactions by the *same* person) (emphasis added).

It is true that under 6 *Del. C.* § 4-406(d), if a customer fails to comply with subsection (c) requiring reasonable promptness to examine bank statements, then the customer may not assert against the bank:

> The customer's unauthorized signature or alteration *by the same wrongdoer* on any other item paid in good faith by the bank if the payment was made before the bank received notice from the customer of the unauthorized signature or alteration and after the customer has been afforded a reasonable period of time, not exceeding 30 days, in which to examine the item or statement of account and notify the bank.[51]

Wells Fargo contacted Keeler about a possible fraudulent transaction by someone other than Watson.[52] This is not the same wrongdoer under the provisions of the UCC upon which they rely to deny the claim. It is unclear if Wells Fargo provided the proper basis of denial under the UCC where the fraudulent transactions between October 15, 2013 and December 5, 2013 may have been committed by Watson or someone else. This may impact the applicability of this provision of the UCC.[53] Further, Wells Fargo's sole reliance under the UCC, without consideration of the breach of contract claim, raises troubling policy concerns.

---

[51] 6 *Del. C.* § 4-406(d)(2) (emphasis added).

[52] Compl. ¶ 6.

[53] Keeler's notification to Wells Fargo was within the one-year substantive statutory period under § 4-406(f), which provides:

> Without regard to care or lack of care of either the customer or the bank, a customer who does not within one year after the statement or items are made available to the customer (subsection (a)) discover and report the customer's unauthorized

14

Wells Fargo relies on different dates both to deny her claim and dismiss her action. On the one hand, it argues dismissal is warranted because her statute of limitations started running on December 5, 2013 when Wells Fargo cashed her check, which happened to be the same day Wells Fargo knew of the fraud. On the other hand, Wells Fargo uses either the contractual language found in Keeler's Agreement or the UCC to deny the claim because she failed to notify Wells Fargo of the fraud until April 2014.

Accepting Wells Fargo's theory, Keeler should have been mounting her case against it while also working toward getting it to reimburse her as of December 5 when she first learned of the unauthorized check. Alternatively, Wells Fargo suggests that even after her claim was denied, "Keeler (and her counsel) had roughly 26 months (which is more than adequate time) to prepare her three-page complaint against Wells Fargo and failed to do so."[54] Under either theory, Wells Fargo wishes to superimpose time limits regarding negotiable instruments under the UCC to dictate statute of limitation considerations of broader breach of contract claims.

In *Connelly v. State Farm Mutual Automobile Insurance Company*,[55] the

---

signature on or any alteration on the item is precluded from asserting against the bank the unauthorized signature or alteration.

6 *Del. C.* § 4-406(f).

[54] Appellee's Answering Br. at 24.

[55] 135 A.3d 1271 (Del. 2016).

Delaware Supreme Court reversed the Superior Court's decision to grant State Farm's motion to dismiss.[56] After the jury returned a verdict in her favor, Connelly brought a bad faith claim against State Farm and its insured for State Farm's refusal to settle its claim against its insured and for not seeking appellate review of the excessive judgment in breach of its contractual obligations to its insured.[57] State Farm argued, and the Superior Court agreed, that the statute of limitations began to accrue on the date of the wrongful act, which was the date that State Farm denied Connelly's settlement demand.[58] The Delaware Supreme Court reversed, holding that "a claim that an insurer acted in bad faith when it refused to settle a third-party insurance claim accrues when an excess judgment against an insured becomes final and non-appealable."[59]

In support of its holding in *Connelly*, the Supreme Court examined the policy objectives that were advanced in support of the majority rule as advocated by Connelly.[60] The majority approach adopted by the Court "reduces the possibility of

---

[56] *See Connelly*, 135 A.3d at 1281.

[57] *See id.* at 1273 (noting that Connelly "brought a claim against State Farm and [its insured] as [its insured]'s judgment creditor" and later obtained an assignment of State Farm's insured's rights to pursue this legal action).

[58] *See id.* at 1273-74.

[59] *Id.* at 1281 (agreeing with Connelly's argument that reflected the majority rule of other courts).

[60] *See id.* at 1277.

16

a conflict of interest between the insurer and the insured."[61] This potential conflict of interest would arise if the Court accepted State Farm's position because the "insured would have to bring a cause of action against the insurer while expecting the insurer to zealously defend her interests in the underlying insurance claim."[62] The majority approach can also save the insured litigation costs.[63] Although this is not an insurance matter, somewhat similar policy considerations apply here.

To accept Wells Fargo's position condones a practice that runs the risk of shortening the statute of limitations period for these types of cases and echoes similar policy considerations discussed in *Connelly*. The delays that may occur when an institution processes a customer's claim via internal policies is one thing. Many business management decisions may be occurring for it to decide whether to accept or deny a customer's claim. However, Wells Fargo's argument invites Keeler and others similarly situated to be ready to run to the courthouse from the first fraud alert. Wells Fargo appears to be receptive to the increased litigation costs that would naturally flow from this argument. Also, the statute of limitations for a breach of

---

[61] *Connelly*, 135 A.3d at 1277.

[62] *Id.* at 1277-78 (citing *Taylor v. State Farm Mut. Auto. Ins. Co.*, 913 P.2d 1092, 1097 (Ariz. 1996)).

[63] *Id.* at 1278 (citing *Boyd Bros. Transp. Co., Inc. v. Fireman's Fund Ins. Companies*, 540 F. Supp. 579, 583 n.3 (M.D. Ala. 1982)).

contract claim is three years from the accrual of the cause of action.[64] This accrual date would be rendered meaningless and presents clear incentives for further delay. A bank could process its claim at a pace that—regardless of intent—would coincidentally and concurrently run down the statute of limitations period. This is problematic.

Under a motion for judgment on the pleadings under Court of Common Pleas Rule 12(c),[65] the trial court was required to "accept all well-pled allegations of the Complaint as true."[66] During oral argument before the trial court, Keeler asked to be heard on the issue of breach of contract.[67] And again during oral argument before this Court, Keeler raised the contract issue.[68] Wells Fargo argued both the absence and existence of a contract to both courts. It remains unclear whether Keeler's breach of contract claim is preempted by the UCC or considered as a viable claim as

---

[64] *See* 10 *Del. C.* § 8106.

[65] Ct. Com. Pl. Civ. R. 12(c).

[66] *Green v. PNC Financial Services Group, Inc.*, 2015 WL 1236847, at *2 (Del. Com. Pl. Mar. 18, 2015).

[67] *See* CCP Tr. at 11-13 (arguing that this case deals with a matter of contract and the running of the statute of limitations applicable to breach of contract claims should apply).

[68] *See* Transcript of Oral Argument in Superior Court at 15, *Keeler v. Wells Fargo Bank, N.A.*, N17A-12-005 VLM (Del. Super. Jan. 3, 2019) ("The injury is Wells Fargo's failure to act appropriately under its contract with Ms. Keeler and that that would start the three-year statute of limitations commencing with the date of the letter in August 2017.").

it was not adequately presented in the pleadings before the trial court or this Court.[69]

This Court remands the matter to the trial court to consider whether Keeler's breach of contract claim can proceed independent of the UCC claim, or whether, within the UCC, dismissal on the pleadings is warranted in light of Wells Fargo's reliance on UCC provisions that may have been inapplicable, as well as its inconsistent representations regarding the existence of an agreement between the parties.

### The Lower Court Did Not Consider Equitable Tolling Under the UCC

Delaware UCC § 4-111 provides that an "action to enforce an obligation, duty, or right arising under this Article must be commenced within three years after the [cause of action] accrues."[70] Under the UCC, Keeler argues she pled facts in her original Complaint regarding Wells Fargo's conduct that impacted her ability to file her action.[71] Wells Fargo argues that Keeler improperly raised issues of inequitable

---

[69] *See, e.g., West Coast Opportunity Fund*, 12 A.3d at 1132 (explaining that the pleadings did not adequately present issues the Court raised on appeal, one of which the Court raised *sua sponte* and the other which was raised "obliquely" and not fully developed by the plaintiff, thus the case was remanded and the parties were given "leave to amend their pleadings to frame and present those issues in a procedurally cognizable way"). To the extent the Court raised the issue *sua sponte* during oral argument, it was based on the Keeler's argument that the statute of limitations would commence in August 2017 due to Wells Fargo's failure to act appropriately under its contract and the pleadings presented to this Court, including the Complaint.

[70] 6 *Del. C.* § 4-111.

[71] Keeler appears to focus on equitable tolling of the statute of limitations, rather than fraudulent concealment as a theory of tolling. In order to toll the statute of limitations for fraudulent concealment, the defendant would have to be "engaged in fraudulent concealment of the facts necessary to put [Keeler] on notice of the truth." *In re Dean Witter Partnership Litigation*, 1998

19

conduct, misrepresentations, and concealment for the first time on appeal.[72] This

Court disagrees.   During oral arguments, the lower court and Wells Fargo

acknowledged as much:

> The Court: But the bank didn't do that, right.  The bank took some steps
> and eventually gave a denial letter or some notification saying we're
> denying you're claim, right?
>
> [Wells Fargo]: Eventually, right, but then the plaintiff had – the denial
> occurred in August of –
>
> . . .
>
> [Wells Fargo]: – is what I was attempting to clarify, is that the Statute
> began to run when the check was cashed and then Wells Fargo nine
> months later willingly gave a denial letter and didn't just let them know,
> okay, if you want to enforce your rights, you can enforce your rights.
>
> The Court: During which time presumably the plaintiff was waiting on
> a determination from Wells Fargo as to whether they're going to pay or
> not, right?
>
> [Wells Fargo]: Yes.  But that was the plaintiff's decision.  The plaintiff
> does not have to wait.  There's no –
>
> The Court: I know you technically don't have to wait but shouldn't I
> look at that as a tolling situation perhaps?

---

WL 442456, at *5 (Del. Ch. July 17, 1998) (citation omitted).  Under fraudulent concealment "a
plaintiff must allege an affirmative act of 'actual artifice' by the defendant that either prevented
the plaintiff from gaining knowledge of material facts or led the plaintiff away from the truth."
*In re Tyson Foods, Inc.*, 919 A.2d 563, 585 (Del. Ch. 2007) (citations omitted).

[72] Appellee's Answering Br. at 17-21.

20

[Wells Fargo]: I don't think it's tolling, Your Honor, for this reason. The Wells Fargo gave the denial in April of – excuse me, in August of 2014. There's still two-and-a-half years there to file suit.[73]

Under the equitable tolling doctrine, the statute of limitations may be disregarded "if a plaintiff allege[s] facts with specificity to indicate a defendant affirmatively acted to mislead and induce [the plaintiff] from bringing suit...."[74] Mere attempts "'to repair or a promise to repair [a breach of contract] do not preclude the running of the statute.'"[75] Equitable exceptions to the statute of limitations, like equitable tolling, "are narrow and designed to prevent injustice."[76]

This Court does not disturb the trial court's decision regarding what approach may best allow for uniformity regarding the cause of action accrual date under the UCC. Clearly, if Keeler walked in years after the unauthorized transaction to report the fraud, Wells Fargo should be able to count on a mechanism that allows for "predictability and finality of commercial transactions."[77] But that is not what

---

[73] CCP Tr. at 6-8.

[74] *Central Mortg. Co. v. Morgan Stanley Mortg. Capital Holdings LLC*, 2012 WL 3201139, at *23 (Del. Ch. Aug. 7, 2012) (internal quotations and citations omitted).

[75] *Id.* (quoting *Burrows v. Masten Lumber & Supply Co.*, 1986 WL 13111, at *2 (Del. Super. Oct. 14, 1986)).

[76] *Id.* (internal quotations and citations omitted).

[77] *Husker News Co. v. Mahaska State Bank*, 460 N.W. 2d 476, 477 (Iowa 1990) (identifying objectives of UCC that include "uniform application of commercial law among the states and the presumption in favor of predictability and finality of commercial transactions") (internal citations omitted). *See also Pero's Steak & Spaghetti House v. Lee*, 90 S.W.3d 614, 624 (Tenn. 2002) ("Negotiable instruments are intended to facilitate the rapid flow of commerce by

21

happened here.

If the lower court finds that her breach of contract claim is preempted by the UCC, regardless of the approach adopted, there were facts pleaded by Keeler as to the conduct of Wells Fargo that may have served to toll the statute of limitations. Since the lower court mentions equitable tolling during oral arguments but the Order is silent regarding what, if any, consideration was given, the matter is remanded for a final determination.

## CONCLUSION

The Memorandum Order included a thorough discussion of the accrual of the statute of limitations under the UCC in various jurisdictions, and this Court does not disturb the analysis. However, upon a *de novo* review of the pleadings, the Court finds the record is unclear and inconsistent regarding facts provided and representations made to the trial judge. The Court of Common Pleas did not consider the doctrine of equitable tolling to its selected approach under the UCC, or fully make findings of fact or conclusions of law regarding dismissal of Keeler's original breach of contract claim. Therefore, the decision of the Court of Common Pleas granting Wells Fargo Bank's Motion for Judgment on the Pleadings is **REVERSED** and **REMANDED** for determinations consistent with this ruling.

**IT IS SO ORDERED.**

---

providing certainty and finality in commercial transactions.").

Vivian L. Medinilla
Judge